**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| John W. Chandler, | No. CV-20-00924-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Louis DeJoy, Postmaster General, United States Postal Service | |
| Defendant. | |

John W. Chandler ("Plaintiff") has sued his former employer, the United States Postal Service (the "Agency"),[1] for disability, race, sex, and age discrimination. Now pending before the Court is the Agency's motion to dismiss for failure to state a claim. (Doc. 10.) For the following reasons, the motion is granted.

## BACKGROUND

I.    Underlying Facts

The following facts are derived from the complaint and documents subject to judicial notice.[2]

---

[1]    Megan Brennan, the original named defendant in this action, was the Postmaster General at the time the complaint was filed, but she has since stepped down. Louis DeJoy is the current Postmaster General and is therefore automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d). *See also* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 25, at 733 (2020) ("Under Rule 25(d), substitution is automatic when a public officer sued in his or her official capacity leaves office and is replaced. No substitution order or motion is necessary.") (footnotes omitted).

[2]    The Agency asks the Court to take judicial notice of five exhibits attached to its motion: (1) an Agency "Information for Pre-Complaint Counseling" form dated April 15, 2016 (Doc. 10-2); (2) an "Acceptance for Investigation" letter from the Equal Employment

1    Plaintiff is a 51-year-old white male who suffers from post-traumatic stress disorder

2    ("PTSD"), depression, and high anxiety.  (Doc. 1 ¶¶ 1, 6.)  The Agency has been aware of

3    Plaintiff's PTSD since at least April 23, 2012, when Plaintiff informed the Agency's

4    District Reasonable Accommodation Committee (the "Accommodation Committee") of

5    his disability.  (*Id.* ¶¶ 6, 8.)  Plaintiff's Agency medical file contains "at least 58 records"

6    involving his PTSD, depression, and high anxiety dating from December 1, 2011 to April

7    27, 2016.  (*Id.* ¶ 24.)

8    The gravamen of Plaintiff's complaint is that he suffered disability, race, sex, and

9    age discrimination "when proper procedures were not followed in his EEO matters [and]

10   his requests for reasonable accommodation."  (*Id.* ¶¶ 7, 39.)  Plaintiff alleges that on many

11   occasions "there was no provision of reasonable accommodation, nor denial and no

12   interactive process."  (*Id.*)  He alleges that he was treated differently in this regard than

13   other unnamed "similarly situated" employees who were not of his protected class.  (*Id.*

14   ¶¶ 15, 34, 38, 51, 57.)

15   In 2012, Plaintiff refrained from asking the Accommodation Committee for a

16

17   Opportunity Commission ("EEOC") dated July 27, 2016 (Doc. 10-3); (3) a "Motion to
     Amend and Restore Claims" filed in the EEOC Phoenix District Office dated July 6, 2018

18   (Doc. 10-4); (4) an "Order Denying Complainant's Motion to Amend; Clarifying
     Disability" from the EEOC Phoenix District Office dated August 17, 2018 (Doc. 10-5);

19   and (5) a "Dismissal of Formal EEO Complaint" from the EEOC dated December 27, 2018
     (Doc. 10-6).  Because Plaintiff does not dispute the authenticity of the exhibits (Doc. 16 at

20   8-9), this request is granted.  *Lacayo v. Donahoe*, 2015 WL 993448, *9 (N.D. Cal. 2015)
     ("In the context of employment discrimination cases in particular, it is well established that

21   courts may consider the administrative record of a plaintiff's claims before the EEOC as
     judicially noticeable matters of public record.").  And because these exhibits are properly

22   subject to judicial notice, the Court may consider them when ruling on the Agency's motion
     to dismiss under Rule 12(b)(6).  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir.

23   2003) ("When ruling on a Rule 12(b)(6) motion to dismiss, . . . [a] court may . . . consider
     certain materials—documents attached to the complaint, documents incorporated by

24   reference in the complaint, or matters of judicial notice—without converting the motion to
     dismiss into a motion for summary judgment."); *Lacayo*, 2015 WL 993448 at *10 ("The

25   extrinsic evidence that Defendant submitted all pertains to Plaintiff's administrative
     proceedings with the EEO; thus, all are either referenced in the complaint or matters of

26   public record and properly considered on either a 12(b)(1) or 12(b)(6) motion to dismiss.");
     *Leon v. Danaher Corp.*, 2011 WL 13190172, *3 (D. Ariz. 2011) ("[T]he Court takes

27   judicial notice of the EEOC proceedings in Plaintiff's case, including the EEOC Charge.").
     The Court takes notice only of the existence of the administrative proceeding documents

28   and the presence of the statements from Plaintiff, the Agency, and the EEOC contained
     therein and "does not credit the truth of any fact recounted or matter asserted in the
     documents."  *Lacayo*, 2015 WL 993448 at *10.

- 2 -

reasonable accommodation for his disabilities because he was able to address these issues with his existing arrangements under the Family and Medical Leave Act ("FMLA").  (*Id.* ¶ 47.)  Plaintiff alleges that from this point forward, the Agency repeatedly failed to "enter into the interactive process of accommodation" even though it was aware of his disabilities.  (*Id.* ¶ 19.)  From June 2013 through April 2016, Plaintiff made over a dozen requests for a reasonable accommodation, and on at least ten of these occasions Agency management did not follow proper policies or procedures.  (*Id.* ¶¶ 21, 25, 30.)  The Agency in effect "failed to even discuss reasonable accommodation."  (*Id.* ¶ 30.)

On December 16, 2013, a nurse employed with the Agency opined that Plaintiff did not have a disability.  (*Id.* ¶¶ 17, 45.)  This opinion appears to have been premised on an assertion by Plaintiff's manager that Plaintiff had not provided any documentation of a disability.  (*Id.* ¶ 45.)  Plaintiff alleges that the manager was incorrect because, although he did not provide any *new* documentation, "his medical file shows at least 58 medical records showing he had a mental disability."  (*Id.*)

On December 19, 2013, the Accommodation Committee denied Plaintiff's request for leave as a reasonable accommodation but did not make a formal denial, which prevented Plaintiff from appealing the decision.  (*Id.* ¶¶ 22, 43.)  Kathy Holsome-Benion ("Holsome-Benion"), an African-American woman who appears to have held a supervisory role over Plaintiff, denied him the opportunity to have union representation at the December 19, 2013 meeting, telling Plaintiff that the meeting could not be rescheduled and that he must attend.  (*Id.* ¶ 32; Doc. 10-2 at 3.)

On December 26, 2013, the Accommodation Committee issued a "Report of Investigation" finding that Plaintiff did not have a disability.  (Doc. 1 ¶ 17.)  According to Plaintiff, this finding was the product of "a total failure of due diligence."  (*Id.*)  After 2013, Plaintiff's requests for accommodation were not forwarded to the Accommodation Committee, as Plaintiff alleges they should have been.  (*Id.* ¶¶ 11, 13, 31.)

In December 2014, the Vice President of the National Association of Letter Carriers—not a party here—shared Plaintiff's unredacted medical records with Plaintiff's

supervisor at the Agency.  (*Id.* ¶ 26.)  This sharing was "regular practice."  (*Id.*)  Plaintiff alleges that his supervisor "had no right to this information and [the supervisor's] receipt of it was discriminatory."  (*Id.*)  Around this time, Plaintiff's doctor responded to a medical inquiry by stating that "the only issue having to do with any type of accommodation would be the time he needed off work in order to get well from his issues."  (*Id.* ¶¶ 23, 44.)  On or around December 30, 2014, Agency management "failed to enact and engage in the interactive reasonable accommodation process" in response to this statement from Plaintiff's doctor.  (*Id.*)

Throughout 2015, Agency management continued not to follow proper policies and procedures in response to Plaintiff's requests for reasonable accommodation.  (*See, e.g.*, *id.* ¶ 21.)  Between February and September 2015, Plaintiff received four "letters of warning" from his supervisors for unspecified reasons.  (*Id.* ¶ 16.)  While Plaintiff was on unpaid sick leave during this period, Holsome-Benion omitted a date (April 9, 2015) in Plaintiff's leave records.  (*Id.* ¶ 34.)

On March 2, 2016, an incident similar to the one described as happening on December 30, 2014 occurred—that is, Agency management failed to engage in the reasonable accommodation process after Plaintiff's doctor responded to a medical inquiry by stating that "the only issue having to do with any type of accommodation would be the time [Plaintiff] needed off work in order to get well from his issues."  (*Id.* ¶¶ 23, 44.)  On March 9, 10, 30, and 31, 2016, "grievances were settled" regarding Plaintiff's requests for leave and accommodations.  (*Id.* ¶ 18.)  On March 21, 2016, a finding of fact "was issued on Plaintiff while he was incapacitated due to his disabilities [and] unable to attend both physically and telephonically."  (*Id.* ¶ 33.)  Plaintiff asked that the fact finding be postponed but this request was denied.  (*Id.*)  On March 9, 2016 "Holsome-Benion responded to the Plaintiff's March 2, 2016 request for reasonable accommodation."  (*Id.* ¶ 37.)  The significance of this event is not clear, but it appears there was a clerical error regarding the correct timing of these actions, as Plaintiff alleges that the Agency later identified April 4, 2016 as the date of the response to Plaintiff's request for accommodation, when in fact that

was the date on which Plaintiff made a new request for accommodation.  (*Id.*)

On April 4, 2016, one or more of Plaintiff's grievances regarding his accommodation requests were settled.  (*Id.* ¶ 18.)  On April 27, 2016, Plaintiff's doctor wrote a letter stating that "there are times where Plaintiff needs time off due to his disability."  (*Id.* ¶ 29.)  The doctor's letter had a tone of frustration that "his previous notes ha[d] not been read."  (*Id.*)  Also on April 27, 2016, Agency management "did not follow policies or procedures when the Plaintiff requested a reasonable accommodation."  (*Id.* ¶¶ 21, 25, 30.)

On June 24, 2016, four of Plaintiff's outstanding grievances regarding the accommodations process were settled.  (*Id.* ¶ 18.)

In addition to these specific events, Plaintiff also makes more general claims regarding the alleged disability, race, sex, and age discrimination.  For example, Plaintiff asserts that "[u]pon information and belief in 2013 there has been a pattern and practice of [the Agency's] increase and removals and forced retirements for disabled persons on light duty and limited duty compared to 2013 for older employees."  (*Id.* ¶ 14.)  In a similar vein, Plaintiff alleges that the Agency's repeated failures to enter into an interactive process with him regarding his leave requests amounted to "a continuous pattern and practice" based on "deliberate ignorance of the policies and procedures that the [Agency] is obligated to use and enforce and [a] violation" of those policies.  (*Id.* ¶ 28.)  Although the Agency insisted that an "essential function" of Plaintiff's position was that he comply with his assigned work schedule, the Agency had "previously and continually" approved his requests for intermittent leave.  (*Id.* ¶ 40.)  Plaintiff alleges that the Agency had "a continuing pattern and practice" of not recognizing his disability and failing to enter into the interactive process for reasonable accommodation.  (*Id.* ¶ 42.)  Further, Plaintiff alleges that the discipline he received after requests for accommodation was "retaliatory."  (*Id.* ¶ 39.)

Plaintiff also alleges that Holsome-Benion misclassified the type of leave he took "on several occasions," including in April 2015, making it appear that he was on paid rather than unpaid leave.  (*Id.* ¶ 34.)  Plaintiff asserts that Holsome-Benion did not take such

actions with female, African-American, or non-disabled employees.   (*Id.*)   On an unspecified date, Holsome-Benion declared Plaintiff absent without leave even though he had provided medical documentation for the absence.  (*Id.* ¶ 35.)  On several occasions, Plaintiff informed Holsome-Benion and union representatives that he had a medical condition or disability that required reasonable accommodation, but Holsome-Benion failed to follow relevant procedures in response to these statements.  (*Id.* ¶ 36.)  Holsome-Benion also addressed Plaintiff "in a different tone and a different accent than she used with African Americans or Hispanics."  (*Id.* ¶ 38.)

Plaintiff alleges that Holsome-Benion also had a disability, and was otherwise similarly situated to Plaintiff, but she, unlike Plaintiff, was reasonably accommodated and "her situation was reviewed by the [Accommodation] Committee on a timely and recurring basis."  (*Id.* ¶ 50.)  Plaintiff asserts that he suffered discrimination on the basis of sex and race because Holsome-Benion, an African-American woman, received more favorable treatment than he did.  (*Id.* ¶¶ 48-52.)

Plaintiff also argues that at relevant times he was over the age of 40 and treated differently on the basis of his age.  (*Id.* ¶¶ 54-57.)  Plaintiff was in "a top pay scale."  (*Id.* ¶ 55.)   Management allegedly favored younger employees and asked these younger employees to perform the same duties that Plaintiff had performed.  (*Id.*)

II.   <u>Procedural History</u>

A.   **Administrative Proceedings**

On April 15, 2016, Plaintiff completed an "Information for Pre-Complaint Counseling" form.  (Doc. 10-2.)  This form states that on April 4, 2016, Plaintiff requested an appointment with a dispute resolution specialist in the Agency's Equal Employment Office.  (*Id.* at 2.)  Plaintiff attested on this form that on March 31, 2016, he received a "notice of removal" from Holsome-Benion after requesting a reasonable accommodation.  (*Id.*)   Plaintiff further stated that he had been asking for this accommodation since December 19, 2013, yet the supervisor "just issued discipline and did not follow [proper] procedures."  (*Id.*)  In the form, Plaintiff identified Holsome-Benion and one person from

1    the Accommodation Committee as responsible officials.  (*Id.* at 3.)  As remedies, Plaintiff

2    requested immediate reinstatement, the removal of all discipline from his record, and

3    compensatory and punitive damages and back pay.  (*Id.*)  It appears that the National Equal

4    Employment Opportunity Investigative Services Office ("NEEOISO") received this form

5    on April 19, 2016.  (*Id.*)

6         On June 30, 2016, Plaintiff entered a formal complaint with the Agency regarding

7    his reasonable-accommodation contentions.  (Doc. 1 ¶ 4; Doc. 10-3 at 2.)  Plaintiff alleges

8    the Agency used the wrong policy to address his claims, which the Agency later admitted.

9    (Doc. 1 ¶ 12.)  Plaintiff asserts that the policy was "switched" in order "to hinder the EEO

10   process."  (*Id.*)  Plaintiff also alleges that the Agency's alternative dispute resolution

11   specialist failed to contact him, to make herself "available for processing," or to adequately

12   discuss or investigate his claims and eventually closed the complaint even though he "gave

13   her an extension."  (*Id.* ¶ 27.)

14        On July 27, 2016, the Agency EEO office issued an "Acceptance for Investigation"

15   letter acknowledging receipt of Plaintiff's complaint and accepting it for investigation.

16   (Doc. 10-3 at 2, 4.)  The letter states that Plaintiff alleged discrimination based on race,

17   age, and physical disability.  (*Id.* at 2.)  The stated scope of the investigation was the denial

18   of Plaintiff's requests for reasonable accommodations on March 9 and April 4, 2016, as

19   well as a March 31, 2016 letter of removal for failure to maintain regular attendance.  (*Id.*)[3]

20        The complaint and judicially noticed documents do not explain what happened with

21   respect to Plaintiff's claims over the remainder of 2016 and 2017.

22        On July 6, 2018, with the aid of counsel, Plaintiff filed a "Motion to Amend and

23   Restore Claims" with the Equal Employment Opportunity Commission's ("EEOC")

24   Phoenix office.  (Doc. 10-4 at 2, 14.)  The motion reasserted disability, age, and race

25   discrimination and sought to add claims regarding retaliation and failure to reasonably

26   accommodate.  (*Id.* at 2-3.)  The motion also alleged instances of such discrimination

27   _____

[3]     The March 31, 2016 letter had an effective date of May 7, 2016.  (Doc. 10-3 at 2.)
28   It thus appears that Plaintiff's employment was terminated on May 7, 2016.

outside the "narrow" events of March and April 2016, claiming that Plaintiff was discriminated against on other instances in 2013, 2015, and 2016. (*Id.* at 3-13.) The motion sought to include all of these claims in the EEOC's review of Plaintiff's complaint. (*Id.* at 14.)

On August 17, 2018, the EEOC issued an "Order Denying Complainant's Motion to Amend; Clarifying Disability." (Doc. 10-5.) The EEOC's administrative judge stated that a complainant may amend his complaint to include issues "like or related" to those in the original complaint and that a claim "is like or related if it adds to or clarifies, or could reasonably be expected to grow out of the initial complaint." (*Id.* at 3.) The administrative judge found that the "proposed claims, to the extent they are decipherable, do not add to or clarify or current complaint" because the motion "sets forth incidents unrelated in time and content to the original complaint." (*Id.* at 4.) The EEOC thus ordered that, because Plaintiff's motion was denied, the Agency must "commence processing the new claims as a separate EEO complaint," using the filing date of the motion, July 6, 2018,[4] "to determine whether initial EEO counselor contact is timely pursuant to 29 C.F.R. § 1614.105(a)." (*Id.*) The order further noted that Plaintiff and the Agency agreed that Plaintiff's disability is mental, rather than physical, and that in the future Plaintiff's disability should be classified accordingly. (*Id.*)[5]

On November 30, 2018, Plaintiff filed a new formal complaint with the Agency EEO office regarding the claims he sought to add in the July 6, 2018 motion. (Doc. 10-6 at 2.)

On December 27, 2018, NEEOISO issued a "Dismissal of Formal EEO Complaint." (*Id.*) This document explained that federal law provides a 45-day time limit for initiating

---

[4]    There appears to be a typographical error in this section of the order. It states that the filing date of the motion to amend is July 6, 2016, when the correct date is in fact July 6, 2018, as the order itself states in its first paragraph. (Doc. 10-5 at 2, 4.) NEEOISO also used the July 6, 2018 date as the basis for its "Dismissal of Formal EEO Complaint." (Doc. 10-6 at 3-4.)

[5]    The complaint seems to allege that the Agency's misclassification of Plaintiff's disability as physical rather than mental constitutes an independent basis for liability. (Doc. 1 ¶¶ 20, 39.) However, the complaint contains no specific allegations concerning the nature of any physical disabilities.

1    contact with an agency EEO counselor, yet Plaintiff's motion to amend was filed "552 days
2    since the last day of the year in which the issues alleged to be discriminatory occurred,"
3    because the allegations addressed events occurring from 2013 through 2016.  (*Id.* at 2-5.)
4    NEEISIO thus concluded that dismissal was proper.  (*Id.* at 4-5.)  The document instructed
5    Plaintiff that he had 30 days to appeal to the EEOC and, once the EEOC ruled, Plaintiff
6    would have 90 days to file a civil action in federal court.  (*Id.* at 5-6.)

7         On February 14, 2020, an administrative law judge issued a decision.  (Doc. 1 ¶ 4.)

8         On February 20, 2020, the Agency entered a final decision.  (*Id.*)[6]

9         B.    **This Action**

10        On May 13, 2020, Chandler initiated this action by filing a complaint.  (Doc. 1.)
11   The complaint asserts three claims.  Count One is a claim for disability-related
12   discrimination under the Americans with Disabilities Act ("ADA"), the Americans with
13   Disabilities Act Amendments Act ("ADAAA"), and the Rehabilitation Act.  (*Id.* ¶¶ 41-47.)
14   Count Two is a claim for sex and race discrimination under Title VII.  (*Id.* ¶¶ 48-52.)  Count
15   Three is a claim for age discrimination under the Age Discrimination in Employment Act
16   ("ADEA").  (*Id.* ¶¶ 53-57.)

17        On August 14, 2020, the Agency filed its motion to dismiss.  (Doc. 10.)

18        On September 18, 2020, Chandler filed a response.  (Doc. 16.)

19        On September 25, 2020, the Agency filed a reply.  (Doc. 17.)

20                              **DISCUSSION**

21   I.    Legal Standard

22        "[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege
23   'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its
24   face.'"  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting
25   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the
26   plaintiff pleads factual content that allows the court to draw the reasonable inference that

27
28   ---
     [6]    Although Plaintiff asserts that the final decision exhausted the administrative
     prerequisites to filing this action (*id.* ¶ 5), it is unclear how the EEOC resolved Plaintiff's
     original claims regarding conduct in March and April 2016.

1  the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

2  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and

3  are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation

4  omitted).   However, the court need not accept legal conclusions couched as factual

5  allegations. *Iqbal*, 556 U.S. at 679-80.  Moreover, "[t]hreadbare recitals of the elements of

6  a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679.

7  The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix,*

8  *Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

9  II.    Disability Claims

10      As noted, Count One of the complaint asserts claims under the ADA, the ADAAA,

11  and the Rehabilitation Act.  (Doc. 1 at 10.)  However, both parties now agree that Plaintiff,

12  as a federal employee, may not bring claims under the ADA or ADAAA and that his

13  disability-related claims may be brought only under the Rehabilitation Act.  (Doc. 10 at 6;

14  Doc. 16 at 1, 14.)  Plaintiff's ADA and ADAAA claims are therefore dismissed without

15  leave to amend, because amendment would be futile. *Cf. Daniels v. Chertoff*, 2007 WL

16  1140401, *2 (D. Ariz. 2007) ("Under the ADA, the federal government is excluded from

17  the definition of 'employer.'  Based on this exclusion, federal courts have concluded that

18  the ADA provides no remedy to federal employees.") (citation omitted).[7]

19  III.   Administrative Exhaustion

20      The Agency argues that the majority of Plaintiff's claims of discrimination under

21  the Rehabilitation Act, Title VII, and the ADEA must be dismissed because Plaintiff failed

22  to initiate contact with relevant officials "within 45 days of the date of the matter alleged

23  to be discriminatory, or, in the case of a personnel action, within 45 days of the effective

24  date of the action," as required by 29 C.F.R. § 1614.105(a).  (Doc. 10 at 6-7.)  Because

25  ───────────────

26  [7]     Plaintiff seeks "leave to amend Count One as necessary to include the gender and
   race discrimination claims in Count One."  (Doc. 16 at 1.)  This request is confusing
27  because Count One asserts a disability-related discrimination claim under the
   Rehabilitation Act while Count Two asserts a claim for sex and race discrimination under
28  Title VII.  (Doc. 1 at 10-12.)  Therefore, although Plaintiff's request for leave to amend is
   granted to the extent and for the reasons explained in more detail below, there is no basis
   to amend Count One to include sex and race discrimination claims.

Plaintiff first initiated contact with an Agency EEO counselor on April 4, 2016, the Agency argues, only actions taken on or after February 19, 2016 were timely raised and all claims outside this period are barred.  (*Id.* at 6-11 & n.3.)

Plaintiff responds, in somewhat scattershot fashion, that his claims based on events occurring before February 19, 2016 are not time-barred because (1) the Agency's discrimination against him constituted a continuous violation, (2) the different events asserted in the complaint should not be "fragmented," (3) the Agency manifested a "pattern and practice" of discrimination, and (4) to the extent there are timeliness issues, equitable tolling should apply.  (Doc. 16 at 9-14, 17.)  The Agency replies that, outside of a hostile work environment claim, a plaintiff may not sweep in untimely claims under the continuous violation theory, that individualized claims must be assessed individually for purposes of administrative exhaustion, that a pattern-or-practice claim cannot be asserted under these circumstances, and that Plaintiff has failed to allege facts sufficient to demonstrate an entitlement to equitable tolling.  (Doc. 17 at 3-6.)  The Court addresses each argument in turn.

### A.    **Regulatory Requirements**

A plaintiff must exhaust available administrative remedies before filing a Rehabilitation Act, Title VII, or ADEA claim in federal court.  *Kraus v. Presidio Tr. Facilities/Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (Title VII); *Whitman v. Mineta*, 541 F.3d 929, 932-33 (9th Cir. 2008) (ADEA); *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003) (Rehabilitation Act).   For federal employees, such administrative remedies begin at the Equal Employment Office ("EEO") of the employing agency, not at the EEOC.  *Kraus*, 572 F.3d at 1042-43.  Specifically, an aggrieved federal employee "must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter" and "must initiate contact with a Counselor within 45 days of the matter alleged to be discriminatory . . . ."  29 C.F.R. § 1614.105(a).  *See generally Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) ("[A] federal employee must notify an EEO counselor of discriminatory conduct within 45 days of the

1   alleged conduct, and then, if the matter is not resolved, the employee may submit a formal

2   administrative complaint.").

3          Failure to initiate contact with an agency EEO counselor within 45 days is grounds

4   for dismissal, although the time limit may be extended pursuant to waiver, estoppel, or

5   equitable tolling.  *Kraus*, 572 F.3d at 1043.  Although the administrative exhaustion pre-

6   filing requirement "does not carry the full weight of statutory authority and is not a

7   jurisdictional prerequisite for suit in federal court," the Ninth Circuit has "consistently held

8   that, absent waiver, estoppel, or equitable tolling, failure to comply with this regulation is

9   fatal to a federal employee's discrimination claim in federal court."  *Id.* (cleaned up).  *See*

10  *also Fort Bend County v. Davis*, 139 S. Ct. 1843, 1851 (2019) ("Title VII's charge-filing

11  requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription

12  delineating the adjudicatory authority of courts.").  "The limitations-period analysis is

13  always conducted claim by claim" and "begins running on any separate underlying claim

14  of discrimination when that claim accrues."  *Green v. Brennan*, 136 S. Ct. 1769, 1782

15  (2016).  Untimely allegations may be considered, however, in the adjudication of the timely

16  claims.  *Lyons v. England*, 307 F.3d 1092, 1108 (9th Cir. 2002).

17         Here, although the complaint alleges that the Agency discriminated against Plaintiff

18  from 2013 to 2016, it does not allege any contact with an Agency EEO counselor before

19  April 4, 2016.  Nor does Plaintiff argue that his earlier interactions with Agency supervisors

20  or union personnel regarding his claims might satisfy the regulation's "contact with a

21  Counselor" requirement.  *Compare Kraus*, 572 F.3d at 1044-46 ("[A] complainant may

22  satisfy the criterion of EEO Counselor contact by initiating contact with any agency official

23  logically connected with the EEO process, even if that official is not an EEO Counselor,

24  and by exhibiting an intent to begin the EEO process.") (emphases and internal quotation

25  marks omitted).  Thus, Plaintiff's claims regarding discriminatory acts before February 19,

26  2016 (*i.e.*, 45 days before Plaintiff's first contact on April 4, 2016) are untimely.  *See, e.g.*,

27  *Lyons*, 307 F.3d at 1105 ("Because appellants initially contacted an EEO counselor on June

28  20, 1996, we hold that appellants' claims arising out of incidents occurring before May 7,

1996 are time-barred."); *Pena v. U.S. Postal Serv.*, 2019 WL 634645, *9 (N.D. Cal. 2019) ("Because he failed to contact an EEO counselor within the required 45-day limit, Pena's administrative Title VII and Rehabilitation Act claims are untimely."); *Lacayo v. Donahoe*, 2015 WL 993448, *11 (N.D. Cal. 2015) ("The allegations in the FAC and the judicially noticeable documents indicate that Plaintiff did not formally initiate EEO counseling by filing an 'Information for Pre-Complaint Counseling' until March 11, 2013—276 days after the latest-dated adverse employment action mentioned in the 2013 EEO Complaint. . . . Thus, her first actual request for EEO counseling was well outside the 45-day window and her claims are time-barred.").

Plaintiff's only timely claims, therefore, are as follows: (1) the March 2, 2016 mishandling of Plaintiff's accommodation request, including by ignoring a letter from Plaintiff's doctor stating that Plaintiff needed time away from work to address his psychological issues (Doc. 1 ¶¶ 21, 25, 30, 44); (2) the March 9, 2016 response from Holsome-Benion to Plaintiff's request for accommodation (*id.* ¶ 37; Doc. 10-3 at 2); (3) the March 21, 2016 findings of fact issued against Plaintiff while he was incapacitated due to his disability and unable to attend the proceeding, and the denial of his request for postponement of the fact-finding proceeding (Doc. 1 ¶ 33); (4) the March 31, 2016 denial of Plaintiff's request for accommodation (*id.* ¶¶ 21, 25, 30); (5) the April 4, 2016 denial of Plaintiff's request for accommodation (*id.*); and (6) the April 27, 2016, failure to follow policies or procedures (*id.* ¶¶ 21, 25, 29-30).  The Agency does not contest the timeliness of these claims.  (Doc. 10 at 9.)

B.   **Continuous Violation**

Plaintiff argues his earlier claims should be considered timely because the Agency's accommodation denials and other conduct were of a "continuous nature."  (Doc. 16 at 11.) In a related vein, Plaintiff argues that fragmenting claims "is frowned upon by" the EEOC's Management Directive 110.  (*Id.*)  For these reasons, Plaintiff contends that because at least one of his allegations was timely, his older allegations can also form a basis for relief.  (*Id.* at 10-12.)  The Agency responds that Plaintiff's continuing violation theory is barred by

Supreme Court and Ninth Circuit precedent.  (Doc. 17 at 4-5.)

The Agency is correct.  In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they relate to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id.* at 113. However, "[i]n contrast to discrete acts," the *Morgan* Court "carved out an exception for claims based on a hostile work environment."  *Cherosky*, 330 F.3d at 1246.  Thus, a hostile work environment claim may encompass acts outside the limitation period "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *Id.* (internal quotation marks omitted).  But claims based on a series of discrete acts, rather than a hostile work environment, "are only timely where such acts occurred within the limitations period."  *Id.*

Here, Plaintiff does not allege a hostile work environment, but instead a series of discrete discriminatory acts occurring over a roughly three-year period.  His claims based on events occurring before February 19, 2016 thus remain untimely.  *See also Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 748 (9th Cir. 2019) ("[A]fter [*Morgan*], little remains of the continuing violations doctrine . . . [e]xcept for a limited exception for hostile work environment claims. . . .").

## C.    **Pattern And Practice**

Plaintiff argues, in a related vein, that his earlier claims are timely because all the alleged discriminatory acts, spanning from 2013 to 2016, constituted a "pattern and practice" of disability, sex, race, and age discrimination.  (Doc. 1 ¶¶ 14, 28, 42; Doc. 16 at 3, 9-11, 13, 16-17.)  The Agency responds that a pattern-or-practice claim is properly raised only under limited circumstances and that as a general matter "the pattern and practice method of proving discrimination is only available to class plaintiffs or the EEOC, and is not available to individual plaintiffs."  (Doc. 10 at 11-12.)

The Agency is again correct.  Although the Ninth Circuit has not conclusively limited pattern-or-practice claims to class plaintiffs or the EEOC, Ninth Circuit precedent

suggests that a pattern-or-practice claim will not lie under these circumstances.   In *Cherosky*, the court affirmed a district court's grant of summary judgment against employees of the U.S. Postal Service who alleged a pattern and practice of disability discrimination.   330 F.3d at 1244-45.   The Postal Service had repeatedly denied these plaintiffs' requests to use respirators at work pursuant to a "policy of prohibiting respirators except where air contaminants exceed the limits" established by statute.   *Id.*   The court reasoned that "pattern-or-practice claims cannot be based on 'sporadic discriminatory acts' but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace."   *Id.* at 1247.   The court noted that the plaintiffs did not attempt to show, by argument or statistical or other evidence, "that the Postal Service widely discriminates against employees with disabilities or even that it routinely discriminates with respect to respirator requests."   *Id.*   Thus, even though the plaintiffs' accommodation requests were denied pursuant to a policy, the denials amounted to "individualized decisions . . . best characterized as discrete acts, rather than as a pattern or practice of discrimination."   *Id.*   And because the challenged conduct "remain[ed] divisible into a set of discrete acts, legal action on the basis of each of which must be brought within the statutory limitations period."   *Id.* (quoting *Lyons*, 307 F.3d at 1108).

In short, the Ninth Circuit has "consistently refused to apply the [pattern-or-practice theory] to rescue individualized claims that are otherwise time-barred," while leaving open the possibility that such a theory could extend the limitations period in class-wide claims. *Bird*, 935 F.3d at 747-48.   But here, Plaintiff does not assert a class-wide claim.   Instead, his claims are based on a series of discrete instances of denials of reasonable accommodation requests.   Even if such acts are related, they remain "divisible into a set of discrete acts" and thus each "must be brought within the statutory limitations period." *Cherosky*, 330 F.3d at 1247.   The upshot is that, even to the extent Plaintiff asserts "that this series of discrete acts flows from a company-wide, or systematic, discriminatory practice," he cannot "succeed in establishing the employer's liability for acts occurring

outside the limitations period." *Lyons*, 307 F.3d at 1107.  *See also Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 699, 701-02 (9th Cir. 2009) (affirming dismissal of pattern-or-practice claims under Rule 12(b)(6) because "plaintiffs had not shown the existence of a pattern or practice of discrimination but rather ongoing harm resulting from earlier discrete decisions").

### D.   Equitable Tolling

Plaintiff argues the limitations period should be extended because the complaint "clearly sets forth facts supporting waiver, estoppel, or equitable tolling."  (Doc. 16 at 13.) Plaintiff asserts that the law "clearly supports equitable tolling is applicable here . . . . where [Plaintiff] has alleged ongoing violations, [and has notified the Agency] of his allegations through the years."  (*Id.* at 12.)  The Agency responds that courts only "sparingly" allow equitable tolling and that none of Plaintiff's allegations demonstrate that the 45-day period should be tolled.  (Doc. 10 at 10-11.)

Plaintiff has failed to establish that equitable tolling, waiver, or estoppel apply here. Plaintiff makes little effort to establish the applicability of waiver or estoppel, stating merely that "facts supporting waiver, estoppel, or equitable" tolling are "clearly" present, without indicating which, if any, allegations in the complaint actually support waiver or estoppel.  (Doc. 16 at 13.)  In any event, it is hard to see how the Agency could have waived the issue of timeliness when the Agency has consistently contested throughout this case— and consistently contested throughout the EEOC proceedings—the timeliness of Plaintiff's claims.  (Doc. 10 at 6-11; Docs. 10-5, 10-6.)  *See also Sager v. McHugh*, 942 F. Supp. 2d 1137, 1145 (W.D. Wash. 2013) ("Waiver of the administrative deadlines is allowed only in very limited circumstances, such as where the parties have agreed to extend the time period, or where the agency or the EEOC has specifically ruled that an EEO complaint is timely.").

Equitable estoppel "focuses on the defendant's wrongful actions preventing the plaintiff from asserting his claim."  *Leong v. Potter*, 347 F.3d 1117, 1123 (9th Cir. 2003). A defendant may be estopped from asserting a timeliness defense "if the defendant takes

active steps to prevent the plaintiff from suing in time." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  When considering claims of estoppel, courts consider such factors as "(1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied." *Id.* (internal quotation marks omitted).  Here, Plaintiff does not allege that the Agency took active steps to prevent him from bringing his claim.  Nor does Plaintiff allege that he relied on any representations—deceptive or otherwise—from the Agency that prevented him from bringing suit.  Instead, Plaintiff merely alleges that in 2016, presumably after he had filed his administrative complaint, the Agency's EEO counselor "failed to be in contact with Plaintiff, was not available for processing, did not adequately discuss or investigate, and closed the complaint even though Plaintiff gave her an extension." (Doc. 1 ¶ 27.)  This allegation does not demonstrate an entitlement to equitable estoppel.  Indeed, it is unclear how the counselor's unresponsiveness *after* Plaintiff filed his complaint could somehow excuse Plaintiff's failure to timely contact the counselor in the first instance.

Plaintiff also fails to demonstrate that the limitations period should be equitably tolled.  "Equitable tolling focuses on a plaintiff's excusable ignorance and lack of prejudice to the defendant." *Leong*, 347 F.3d at 1123.  The doctrine "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." *Id.* (internal quotation marks omitted). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Henderson*, 314 F.3d at 414 (internal quotation marks omitted).  Equitable tolling, like waiver and estoppel, must "be applied sparingly." *Morgan*, 536 U.S. at 113.

Plaintiff does not allege any facts that might support a claim of equitable tolling. Nothing in the complaint addresses this issue, and in his response, Plaintiff does not give

provide reason that equitable tolling should apply other than "his notification of the allegations throughout the years."  (Doc. 16 at 12.)  The complaint does allege that Plaintiff repeatedly requested accommodation and interacted with Agency management and union personnel on a regular basis to resolve his issues.  (*See, e.g.*, Doc. 1 ¶¶ 18, 25, 30.)  But these allegations indicate, if anything, that Plaintiff did have notice of his claims and of the filing period and had significant experience with the reasonable accommodation request process.  This weighs against the application of equitable tolling.  *Cf. Pena*, 2019 WL 634645 at *11 ("Here, Pena was not only familiar with the EEO process because of his prior EEO mediation, he was also well aware of his claims.  Pena requested disability accommodation as early as 2011, and reported to his doctor in 2013 that 'Lopez had been forcing him, through intimidation and other tactics to perform tasks.'  There is no evidence to show that Pena's Title VII and Rehabilitation Act administrative claims should be tolled because he lacked knowledge as to his claims or the 45-day limitations period."); *Lacayo*, 2015 WL 993448 at *11 ("Plaintiff nowhere contends that she was unaware of the 45-day timing requirement.  To the contrary, throughout the administrative record she indicates that she had knowledge of the 45-day requirement based on her past EEO experience and the fact that her employer visibly posted a notice of these requirements in her break room, and she does not contest this statement.").  Moreover, "many years have passed since the alleged violations occurred and it would prejudice [the Agency] to be forced to defend against them now."  *Pena*, 2019 WL 634645 at *11.

Accordingly, Plaintiff must be held to the 45-day limitations period, barring recovery on any claims arising before February 19, 2016.  Plaintiff's untimely claims are therefore dismissed.  The dismissal is with leave to amend, but only to the extent Plaintiff can plead additional facts showing that he sought counseling within 45 days of the challenged conduct and/or that might support a claim of waiver, equitable estoppel, or equitable tolling.  *Cf. Lacayo*, 2015 WL 993448 at *18.

…

…

1   IV.   <u>Claims Regarding Processing Of Administrative Complaints</u>

2   The complaint seems to suggest that the Agency's alleged missteps when handling

3   Plaintiff's administrative claims constitute independent violations that may give rise to

4   liability.  For example, the complaint alleges that the Agency used, and admits to using,

5   the wrong policy to address Plaintiff's claims in 2016 and that the "EEO investigator, upon

6   information and belief, switched [the] policy to hinder the EEO process."  (Doc. 1 ¶ 12.)

7   The complaint also alleges that the Agency's EEO counselor "failed to be in contact with

8   Plaintiff, was not available for processing, did not adequately discuss or investigate, and

9   closed the complaint even though Plaintiff gave her an extension" and that Plaintiff also

10  wrote to the counselor's supervisor "t[o] no avail."  (*Id.* ¶ 27.)

11  The Agency argues that such claims are not independently actionable.  (Doc. 10 at

12  12-13.)  Plaintiff responds that under *Babb v. Wilkie*, 140 S. Ct. 1168 (2020), the Agency

13  as a federal employer must be held "to a higher standard" than private companies and thus

14  his mishandling claims are actionable.  (Doc. 16 at 14-15.)  The Agency replies that *Babb*

15  has no bearing on this question and that in fact "[i]t is well settled that allegations regarding

16  errors or mishandling during the administrative EEO claims process are not actionable

17  under the employment discrimination laws."  (Doc. 17 at 6-8.)

18  Neither party cites any Ninth Circuit decisions directly addressing whether a federal

19  employee like Plaintiff may state a viable claim for failure to correctly follow EEO

20  processes, nor has the Court identified any decisions in its own research.  But district courts

21  within the Ninth Circuit that have addressed the issue have generally concluded that such

22  claims are not viable.  In *Sager,* a plaintiff brought a claim against the U.S. Army that

23  "focuse[d] almost entirely on the administrative processing of his informal EEO

24  complaint."  942 F. Supp. 2d at 1147.  The Army sought dismissal of this claim because

25  "there is no cause of action that permits recovery for perceived imperfections in an

26  agency's handling of an administrative complaint."  *Id.*  The court, after noting the absence

27  of clear Ninth Circuit authority on the issue, agreed with the Army, reasoning that because

28  "a private plaintiff whose claim the EEOC mishandled [must] bring a lawsuit against the

- 19 -

plaintiff's employer on the merits, not one against the EEOC," a similar rule should apply to claims brought by federal employees.  *Id.* at 1147-48 (quoting *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000)).  As the Seventh Circuit held in *Jordan*, "even if the EEO Division botched the processing of her complaint, Jordan is now already in federal court on the merits, and any earlier mishandling is essentially moot."  205 F.3d at 342.[8]

Thus, Plaintiff is unable to assert a claim based on the mishandling of his administrative claims.  "Of course, evidence of the mishandling of an EEO complaint might be admissible evidence of an employer's discriminatory motive in the allegedly adverse employment action . . . ."  *Hill*, 2005 WL 3031136 at *3.  But such allegations cannot serve as an independent basis for relief under the Rehabilitation Act, Title VII, or the ADEA.[9]  Accordingly, the aspects of Plaintiff's claims related to the Agency's alleged mishandling of his administrative complaints are dismissed without leave to amend, because amendment would be futile.

…

…

…

---

[8]   *See also Harshaw v. Mnuchin*, 2017 WL 5972718, *2-4 (E.D. Cal. 2017) ("Plaintiff has alleged violations of Title VII against her employer, the Secretary of the Treasury, for alleged discriminatory acts made by the EEO Personnel charged with handling her First EEO Action. . . .  Since the Defendant effectively stood in the same position as the EEOC when its EEO Personnel handled Plaintiff's complaints, and Congress has not authorized Title VII suits against the EEOC for acts taken by its employees while handling discrimination claims, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6)."); *McDermott v. Potter*, 2014 WL 4635444, *4 (W.D. Wash. 2014) ("Plaintiff appears to assert claims regarding the processing of EEO complaints.  These claims are generally not actionable in district court.") (citation omitted); *Hill v. England*, 2005 WL 3031136, *3 (E.D. Cal. 2005) ("[A]n independent claim based on the mishandling of an EEO complaint cannot be stated under Title VII or the Rehabilitation Act. . . .  [P]laintiff cannot rely on the allegations of mishandling of his EEO complaints by employees of the defendant as constituting, of itself, a violation of Title VII or the Rehabilitation Act.").

[9]   *Babb* does not compel a different result.  In *Babb*, the Supreme Court held that a plaintiff asserting a claim under the federal-sector provision of the ADEA may recover certain remedies even if the plaintiff is unable to prove but-for causation.  140 S.Ct. at 1171.  In reaching this conclusion, the Court rejected "the argument that it is anomalous to hold the Federal Government to a stricter standard than private employers or state and local governments," explaining that "[t]hat is what the statutory language dictates."  *Id.* at 1176.  Nothing in *Babb* addresses whether a federal public-sector employee may assert a cause of action premised on the administrative mishandling of a discrimination claim.

V.    <u>Failure To State A Claim Under Title VII And The ADEA</u>

Based on the preceding analysis, Plaintiff's only remaining claims arise from events on or after February 19, 2016.   These claims are: (1) the Agency's March 2, 2016 mishandling of Plaintiff's reasonable accommodation request and ignoring of a letter from Plaintiff's doctor stating that Plaintiff needed time away from work (Doc. 1 ¶¶ 21, 25, 30, 44); (2) Holsome-Benion's March 9, 2016 response to Plaintiff's request for reasonable accommodation (*id.* ¶ 37; Doc. 10-3 at 2); (3) the March 21, 2016 findings of fact that were issued against Plaintiff while he was incapacitated due to his disability (Doc. 1 ¶ 33); (4) the March 31, 2016 and April 4, 2016 denials of reasonable accommodation (*id.* ¶¶ 21, 25, 30); and (5) Agency management's April 27, 2016 failure to follow policies or procedures (*id.* ¶¶ 21, 25, 29-30).   These events form the basis for Plaintiff's Rehabilitation Act, Title VII, and ADEA claims.

In addition to the timely allegations recounted above, Plaintiff makes general assertions—without providing specific dates—regarding the race, sex, and age discrimination he suffered.   With respect to race and sex discrimination, for example, Plaintiff claims he "was treated differently than Ms. Holsome-Benion (African American, female) who on information and belief was similarly situated and received reasonable accommodation from USPS for her disability.   Upon information and belief her situation was reviewed by the [Accommodation Committee] on a timely and recurring basis."  (*Id.* ¶ 50.)   He also alleges that Holsome-Benion misclassified the type of leave he took "on several occasions," making it appear that he was on paid rather than unpaid leave, and that Holsome-Benion did not take such actions with female, African-American, or non-disabled employees.   (*Id.* ¶ 34.)   He claims that "Ms. Holsome-Benion spoke to him in a different tone and a different accent than she used with African Americans or Hispanics." (*Id.* ¶ 38.)

As for the ADEA, Plaintiff claims that while he was experienced and classified in a top pay scale, "[y]ounger, less experienced persons were brought on to fulfill the same duties he had."  (*Id.* ¶ 55.)   He also alleges that "other younger employees were granted leave, intermittent leave and without pay," unlike himself.  (*Id.* ¶ 57.)

The Agency does not move for dismissal of Plaintiff's claim under the Rehabilitation Act (Count One) but does move for dismissal, for failure to state a claim, of Plaintiff's claims for race and sex discrimination under Title VII (Count Two) and for age discrimination under the ADEA (Count Three).  (Doc. 10 at 13-14.)  The Agency argues that to state a valid claim under those statutes, Plaintiff must establish a *prima facie* case of discrimination under the *McDonnell Douglas*[10] framework or provide "direct or circumstantial evidence of discriminatory intent."  (*Id.* at 13.)  Plaintiff does not respond to the Agency's argument that his Title VII claims must be dismissed and instead asserts, in conclusory fashion, that he has adequately stated a claim under the Rehabilitation Act and the ADEA.  (Doc. 16 at 15-17.)

Whether Plaintiff has stated a claim under Title VII and the ADEA is governed by Rule 8, not the *McDonnell Douglas* framework.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).  As the Ninth Circuit has explained, that framework "is an evidentiary standard, not a pleading requirement."  *Id.* at 510.  It therefore does not govern Plaintiff's claims at this stage of litigation.  Instead, ordinary pleading standards apply.  "All factual allegations are accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff."  *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019).

To be sure, a plaintiff still must make "sufficient, nonconclusory allegations" linking the challenged actions to discrimination.  *Id.* at 1138.  Further, although plaintiffs do not have the burden of establishing a *prima facie* case at the pleading stage, courts in the Ninth Circuit continue to review discrimination complaints under the *McDonnell Douglas* framework "so as to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 797 (N.D. Cal. 2015).  *See, e.g.*, *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048-1050 (9th Cir. 2012) (age discrimination); *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1304 (N.D. Cal. 2020) (sex discrimination); *Rivera v. Coventry Health & Life*

---

[10]     *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Ins. Co.*, 2016 WL 3548763, *4 (D. Ariz. 2016) (race discrimination).

A.     **Age Discrimination**

To plead a claim for age discrimination, "a plaintiff must allege in her complaint that: (1) she was at least forty years old; (2) she was performing her job satisfactorily; (3) discharged; and (4) 'either replaced by [a] substantially younger [employee] with equal or inferior qualifications *or* discharged under circumstances otherwise giving rise to an inference of age discrimination.'"   *Sheppard*, 694 F.3d at 1049 (alterations in original) (quoting *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)).

Here, Plaintiff has alleged that he is over forty years old.  (Doc. 1 ¶¶ 1, 6.)  He has also alleged, albeit obliquely, that he was discharged.  (*Id.* ¶ 22.)  But he does not allege how the discharge itself was discriminatory.  This omission, alone, may suggest that he has failed to state an ADEA claim.  *Rivera*, 2016 WL 3548763 at *4 ("Rivera fails to establish a prima facie case of disparate treatment age discrimination . . . . [because] Rivera fails to satisfy the third and fourth prong, as she does not allege how her employment with Aetna came to end, and she fails to allege that she was replaced by a substantially younger employee with equal or inferior qualifications.") (internal quotation marks omitted). However, some courts, reviewing cases where the challenged employment acts did not involve discharge, have instead analyzed prongs three and four of this test by determining whether the employee (3) "was subject to an adverse employment action" and (4) "similarly situated individuals outside his protected class were treated more favorably." *Longariello v. Phx. Union High Sch. Dist.*, 2009 WL 4827014, *3 (D. Ariz. 2009) ("In order to establish a claim of discrimination under [Title VII, the ADEA, and the ACRA], Plaintiff has the burden of showing that: . . . (3) he was subject to an adverse employment action; and (4) similarly-situated individuals outside his protected class were treated more favorably.").

Plaintiff fails to state a claim under either framing of the test.  First, Plaintiff does not allege that he was performing his job duties satisfactorily.  True, he alleges that he "had worked as a city carrier [and] was in a top pay scale."  (Doc. 1 ¶ 55.)  He also alleges that

he "performed the essential functions of his position." (*Id.* ¶ 10.)  But these statements are not allegations that his performance was satisfactory or better.  *Compare Sheppard*, 694 F.3d at 1050 (plaintiff alleged a plausible claim of age discrimination where, *inter alia*, she claimed that "her performance was satisfactory or better" and "she received consistently good performance reviews"); *Rivera*, 2016 WL 3548763 at *4 (satisfactory performance prong satisfied where plaintiff alleged "that she was 'an exceptionally good customer service representative' according to her performance review").  Moreover, Plaintiff acknowledges elsewhere in the complaint that he received four "letters of warning" from his supervisors for unspecified reasons.  (Doc. 1 ¶ 16.)

Plaintiff also fails to state a claim because his allegations regarding others who received more favorable treatment are vague and conclusory.  Although Plaintiff alleges that "[y]ounger, less experienced persons were brought on to fulfill the same duties he had" and that these "younger employees were favored by management" and "were granted leave, intermittent leave and without pay" (*id.* ¶¶ 55, 57), Plaintiff fails to identify any of these "younger employees" by name, fails to provide even a rough approximation of how many of these "younger employees" received the favorable treatment, and does not allege that these "younger employees" were "substantially younger" than him.  *Brazill v. Cal. Northstate Coll. of Pharmacy, LLC*, 904 F. Supp. 2d 1047, 1052-53 (E.D. Cal. 2012) ("[T]he replacement of a slightly younger employee will not give rise to a successful ADEA claim. . . .  [A] ten-year age difference would be considered substantial.").

Accordingly, Plaintiff's ADEA claim is dismissed.  The dismissal is with leave to amend because it may be possible for Plaintiff to cure the aforementioned defects.

## B.     Title VII Race And Sex Discrimination

To plead a claim under Title VII for race or sex discrimination, a plaintiff must allege that: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably."  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000).  *See also Cloud v. Brennan*, 436 F. Supp. 3d at 1304

1  (applying this test to sex discrimination claim at pleading stage); *Rivera*, 2016 WL

2  3548763 at *4 (applying this test to race discrimination claim at pleading stage).

3        An initial problem with Plaintiff's Title VII claim is that, in his response brief, he

4  did not respond to the Agency's arguments regarding the insufficiency of that claim.  The

5  Agency therefore argues that summary dismissal of that claim is warranted.  (Doc. 17 at

6  9.)  The Agency is correct that "the Court is entitled to treat Plaintiff['s] failure to respond

7  as waiver of the issue and consent to Defendant['s] argument."  *Doe v. Dickenson*, 2008

8  WL 4933964, *5 (D. Ariz. 2008).  *See also Burk v. State Farm Fire & Cas. Ins. Co.*, 2017

9  WL 4676588, *3 (D. Ariz. 2017) ("Failure to respond to an argument is a basis upon which

10  to grant Defendant's motion.").

11        The Court nonetheless will review the sufficiency of Plaintiff's Title VII claim on

12  its merits.  Based on that review, the Court concludes that Plaintiff has failed to state a Title

13  VII claim.  Plaintiff alleges that he is a white male (Doc. 1 ¶¶ 1, 6), so he has successfully

14  pleaded that he belongs to a protected class for race and sex discrimination purposes.

15  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("Title VII's prohibition

16  of discrimination 'because of . . . sex' protects men as well as women . . . .") (first

17  alteration in original); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659

18  (9th Cir. 2002) ("It is well-established that Title VII applies to any racial group, whether

19  minority or majority.").  But as with the age discrimination claim, Plaintiff's Title VII claim

20  begins to founder on prong two, because nowhere in the complaint does Plaintiff allege

21  that he was sufficiently qualified for his position.  *Compare Sumera v. Holder*, 2014 WL

22  3058278, *6 (N.D. Cal. 2014) (concluding plaintiff's allegations that he "was qualified,"

23  "was ably performing his job," "was recognized as having done the job without problem,"

24  and received a positive performance evaluation "sufficiently address Plaintiff's

25  qualifications for his position").

26        Further, as for prong four, Plaintiff fails to allege any facts to support his conclusory

27  assertion that Holsome-Benion, who seems to have held a supervisory role over Plaintiff

28  (Doc. 1 ¶ 32; Doc. 10-2 at 2), was in fact similarly situated to him. *Bekkem v. Wilkie*, 915

F.3d 1258, 1275 (10th Cir. 2019) ("[I]t is insufficient for a plaintiff to allege, for instance, that she did not receive an employment benefit that similarly situated employees received. A plaintiff's assertion that she is similarly situated to other employees is just a legal conclusion—and a legal conclusion is never enough.") (citation and internal quotation marks omitted); *Barrett v. Kaiser Found. Health Plan of Nw.*, 2015 WL 1491037, *3 (D. Or. 2015) (allegation "that Defendant treated one similarly situated non-African American employee, Mark Bennet, more favorably than Plaintiff 'under similar, or more egregious, circumstances . . . . provides no more than a conclusory assertion that Plaintiff and Mr. Bennett were similarly situated, and further fails to allege any facts related to the circumstances of Mr. Bennett's discipline"). *See also Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees.").  Plaintiff similarly fails to allege that the other comparators—unspecified female or African American employees—were similarly situated.

Plaintiff's Title VII claim is therefore dismissed.  The dismissal is with leave to amend because it may be possible for Plaintiff to cure the aforementioned defects.

Accordingly,

**IT IS ORDERED** that the Agency's motion to dismiss (Doc. 10) is **granted**.  The ADA and ADAAA claims are dismissed without leave to amend.  Plaintiff's claims regarding the processing of his administrative complaint are also dismissed without leave to amend.  Plaintiff's untimely claims and his claims under Title VII and the ADEA are dismissed with leave to amend, as discussed above.

…

…

…

…

…

…

**IT IS FURTHER ORDERED** that Plaintiff may file and serve a First Amended Complaint ("FAC") within 14 days from the date of this order.  If Plaintiff files a FAC, the changes shall be limited to curing the deficiencies raised in this order and Plaintiff shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit.

Dated this 22nd day of February, 2021.

_____
Dominic W. Lanza
United States District Judge