**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John W. Chandler,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Megan J. Brennan, Postmaster General, United States Postal Service<br><br>　　　　　Defendant. | No. CV-20-00924-PHX-DWL<br><br>**ORDER** |

John W. Chandler ("Plaintiff") has sued his former employer, the United States Postal Service ("USPS"), for disability, age, race, and sex discrimination. (Doc. 1.) In February 2021, the Court granted USPS's motion to dismiss most of Plaintiff's claims. (Doc. 18.) Plaintiff was also granted leave to amend as to some (but not all) of the dismissed claims. (*Id.*) Thereafter, Plaintiff filed a First Amended Complaint ("FAC") (Doc. 21) and USPS again moved to dismiss (Doc. 30). For the following reasons, the motion is granted.

**BACKGROUND**

In his initial complaint, Plaintiff—a 52-year-old male who worked as a letter carrier with USPS from 1995 until 2016 and suffered from post-traumatic stress disorder ("PTSD"), depression, and anxiety—alleged that he suffered (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), the Americans with Disabilities Act Amendments Act ("ADAAA"), and the Rehabilitation Act; (2) race and

sex discrimination in violation of Title VII of the Civil Rights Act; and (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). (Doc. 1 ¶¶ 1, 6, 41-57.) Plaintiff further alleged that he was discriminated against when USPS's Equal Employment Office ("EEO") did not follow proper disability accommodation procedures and that USPS had "a continuing pattern and practice" of treating him differently and of not recognizing his disability. (*Id.* ¶¶ 7, 14, 21, 39, 42.)

In a February 2021 order, the Court dismissed most of Plaintiff's claims and granted leave to amend as to some (but not all) of the dismissed claims. (Doc. 18.)

First, the Court dismissed the ADA and ADAAA components of Count One without leave to amend because both parties agreed that Plaintiff, as a federal employee, could not bring claims under the ADA or ADAAA and that his disability-related claims could only be brought under the Rehabilitation Act. (*Id.* at 10.)

Second, the Court concluded that, because the applicable regulations required Plaintiff to exhaust administrative remedies by initiating contact with an agency EEO counselor within 45 days of each discriminatory act, and Plaintiff did not "first initiate[] contact with an Agency EEO counselor [until] April 4, 2016," any claim based on conduct occurring before February 19, 2016 was time-barred. (*Id.* at 10-13.) This meant that "the majority of Plaintiff's claims of discrimination under the Rehabilitation Act, Title VII, and the ADEA must be dismissed." (*Id.* at 10.) Only six discrete claims of discrimination survived dismissal on this ground. (*Id.* at 13.)[1] In the course of this analysis, the Court also (1) rejected Plaintiff's contention that "his earlier claims should be considered timely because the Agency's accommodation denials and other conduct were of a 'continuous

---

[1] The six claims were: "(1) the March 2, 2016 mishandling of Plaintiff's accommodation request, including by ignoring a letter from Plaintiff's doctor stating that Plaintiff needed time away from work to address his psychological issues; (2) the March 9, 2016 response from Holsome-Benion to Plaintiff's request for accommodation; (3) the March 21, 2016 findings of fact issued against Plaintiff while he was incapacitated due to his disability and unable to attend the proceeding, and the denial of his request for postponement of the fact-finding proceeding; (4) the March 31, 2016 denial of Plaintiff's request for accommodation; (5) the April 4, 2016 denial of Plaintiff's request for accommodation; and (6) the April 27, 2016, failure to follow policies or procedures." (Doc. 18 at 13, citations omitted.)

nature,'" holding that such aggregation might only be permissible in a case involving a hostile work environment claim but "[h]ere, Plaintiff does not allege a hostile work environment" (*id.* at 13-14); (2) rejected Plaintiff's argument that all of his claims could be considered timely under a pattern-and-practice theory (*id.* at 14-16); and (3) rejected Plaintiff's argument that his claims should be considered timely under waiver, estoppel, and/or equitable tolling principles, because Plaintiff "ma[de] little effort to establish the applicability of waiver or estoppel" and did "not allege facts that might support a claim of equitable tolling" (*id.* at 16-18). As to all of the claims dismissed on timeliness grounds, the dismissal was with leave to amend, "*but only to the extent Plaintiff can plead additional facts showing that he sought counseling within 45 days of the challenged conduct and/or that might support a claim of waiver, equitable estoppel, or equitable tolling.*" (*Id.* at 18, emphasis added.)

Third, to the extent the complaint could be construed as raising standalone claims based on the misprocessing of Plaintiff's administrative complaints, the Court dismissed those claims without leave to amend. (*Id.* at 19-20.)

Fourth, the Court concluded that Plaintiff's ADEA and Title VII claims should be dismissed. (*Id.* at 21-26.) As for the ADEA claim, dismissal was warranted because Plaintiff failed to allege that he was performing his job satisfactorily and only offered "vague and conclusory" allegations regarding other, younger employees "who received more favorable treatment." (*Id.* at 23-34.) As for the Title VII claim, dismissal was warranted because Plaintiff again failed to "allege that he was sufficiently qualified for his position," failed "to allege any facts to support his conclusory assertion that Holsome-Benion, who seems to have held a supervisory role over Plaintiff, was in fact similarly situated to him," and failed "to allege that the other comparators—unspecified female or African American employees—were similarly situated." (*Id.* at 21-26.) The dismissal of the ADEA and Title VII claims was with leave to amend "because it may be possible for Plaintiff to cure" the aforementioned defects. (*Id.* at 26.)

On March 31, 2021, Plaintiff filed the FAC. (Doc. 21.) Plaintiff also provided a

redlined version indicating how the FAC differs from the original complaint.  (Doc. 21-1.)

On June 4, 2021, USPS moved to dismiss the FAC.  (Doc. 30.)

On June 28, 2021, Plaintiff filed a response.  (Doc. 33.)

On July 6, 2021, USPS filed a reply.  (Doc. 34.)

**DISCUSSION**

I.     Legal Standard

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party."  *Id.* at 1444-45 (citation omitted).  However, the court need not accept legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 679-680.  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 679.  The court also may dismiss due to "a lack of a cognizable theory."  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II.    Changes That Exceed The Limited Grant Of Leave To Amend

As noted, the February 2021 order authorized Plaintiff to amend his complaint in only three respects: (1) pleading new facts to show that Plaintiff sought counseling within 45 days of each instance of challenged conduct; (2) pleading new facts that might support a claim of waiver, equitable estoppel, or equitable tolling; and (3) pleading new facts that might cure the additional deficiencies associated with Plaintiff's ADEA and Title VII claims (*i.e.,* alleging satisfactory performance and identifying relevant comparators).  (Doc. 18 at 18, 26.)

On the one hand, the redlined version of the FAC suggests that Plaintiff has now

dropped his Title VII claim (which was previously denominated as Count Two)—the references to Title VII and gender discrimination have been struck from various paragraphs (Doc. 21-1 ¶¶ 3, 7) and Count Two has been eliminated (*id.* at 17-18).

On the other hand, the redlines reveal that Plaintiff attempted to make other changes that go beyond the limited scope of leave to amend granted in the February 2021 order. For example, the redlines suggest that Plaintiff attempted to add a hostile work environment claim. (*Id.* ¶¶ 7, 52, 53.) But the February 2021 order did not authorize Plaintiff to attempt to add such a new claim.

The redlines also show that Plaintiff attempted to allege the existence of a new disability (plantar fasciitis) that wasn't mentioned in the original complaint. (*Id.* ¶¶ 6, 8, 51.) This change wasn't authorized by the February 2021 order, either.

Next, the redlines reveal that Plaintiff attempted to add new allegations in support of his pattern-and-practice claim. (*Id.* ¶¶ 17, 18, 32, 52, 74.) But the February 2021 order did not authorize Plaintiff to attempt to resuscitate this claim, which was dismissed for legal reasons (as opposed to the absence of sufficient factual allegations). (Doc. 18 at 14-16.)

Finally, the redlines reveal that Plaintiff attempted to add a new claim entitled "Retaliation." (Doc. 21-1 ¶¶ 75-80.) But, once again, the February 2021 order did not give Plaintiff *carte blanche* to assert new claims and theories of liability.

It was impermissible for Plaintiff to attempt to add new factual allegations and claims that exceeded the limited scope of leave to amend granted in the February 2021 order. *See, e.g.*, *Crane v. Yarborough*, 2012 WL 1067965, *13 n.14 (C.D. Cal. 2012) ("[I]t would be appropriate to strike plaintiff's First Amendment retaliation claim because the addition of such claim which has been raised for the first time in the Second Amended Complaint exceeds the scope of the leave to amend granted in the November 30 Order, plaintiff has not otherwise sought or been afforded leave to add such new claim or theory of liability, and permitting the addition of such claim and requiring defendants to mount a defense thereto at this late juncture would be unfair and prejudicial to defendants."); *PB*

*Farradyne, Inc. v. Peterson*, 2006 WL 2578273, *3 (N.D. Cal. 2006) (striking, without leave to amend, new theory of liability alleged in third amended complaint because it was "outside the scope of the leave to amend granted" when the court dismissed the second amended complaint). *See generally Lizza v. Deutsche Bank Nat. Trust Co.*, 714 F. App'x 620, 622 (9th Cir. 2017) ("The district court . . . did not abuse its discretion when it struck the Lizza Plaintiffs' Second Amended Complaint for exceeding the scope of amendment permitted in the court's first dismissal order."). Accordingly, the unauthorized changes discussed above have no force and will be disregarded.[2]

III.     Untimely Claims

As discussed in the February 2021 order, Plaintiff was required by the applicable regulations to exhaust his administrative remedies by initiating contact with an agency EEO counselor within 45 days of each discriminatory act. (Doc. 18 at 10-13.) Because Plaintiff did not "first initiate[] contact with an Agency EEO counselor [until] April 4, 2016," the Court dismissed any claim based on conduct occurring before February 19, 2016. (*Id.*) However, Plaintiff was granted leave to amend "to the extent Plaintiff can plead additional facts showing that he sought counseling within 45 days of the challenged conduct and/or that might support a claim of waiver, equitable estoppel, or equitable tolling." (*Id.* at 18.)

Although the FAC is not a model of clarity, it appears that Plaintiff attempted to add the following allegation in paragraph 19 in an effort to address these issues: "Contact with any agency official logically connected to the EEO process may satisfy going to an EEO Counselor. Mr. Chandler repeatedly asked supervisors for reasonable accommodation. (See for example ¶¶ 25, 27, 30, 36, 42, 43)." (Doc. 21-1 ¶ 19.) Meanwhile, the cross-

---

[2] Alternatively, the Court would dismiss the hostile work environment claim and the retaliation claim for the reasons stated in USPS's motion. As for the former claim, the FAC does not plead facts suggesting that Plaintiff was harassed, that any such harassment was based on his disability or a request for an accommodation, that any harassment was sufficiently severe or pervasive to create an abusive working environment, or that USPS knew of the harassment and failed to remedy it. As for the latter claim, the FAC merely summarizes USPS's conduct and then asserts in conclusory fashion that Plaintiff's ultimate termination was retaliatory—there are no specific, non-conclusory factual allegations supporting this label.

- 6 -

referenced paragraphs of the FAC read as follows, with the changes from the original complaint indicated via underlining:[3]

¶ 25: "Mr. Chandler was discriminated against when the USPS repeatedly failed to recognize previously intermittent leave and leave for a period of time as a reasonable accommodation; and also classified the disability as physical when Mr. Chandler had clearly told them it was mental <u>as shown in the nurses' affidavit as physical for ROI in 2016</u>. The DRAC <u>chair</u> had noted that Mr. Chandler might need reasonable accommodation when FMLA ran out. Leave is a reasonable accommodation. <u>However, he was never able to get back to DRAC because he had to be referred</u>."

¶ 27: "On or around December 19, 2013 and continuing to his termination, <u>May 2016</u> Management failed to properly deny the [sic] Mr. Chandler's request for leave as a reasonable accommodation, depriving him a place to go with a verbal denial nor any appeal rights. USPS EL-307. <u>Ch. 5, 6</u>."

¶ 30: "<u>The Agency improperly fragmented the claims and the Agency accepted claim had both the wrong date and wrong disability despite having known the disabilities since at least 2012 (See MD 110, at 2-12)</u>."

¶ 36: "Mr. Chandler was discriminated against when the USPS repeatedly failed to recognize previously intermittent FMLA leave and leave for a period of time is a reasonable accommodation. The Agency also classified the Disability as Physical when Mr. Chandler reported it was mental. The Agency declared Mr. Chandler 'not disabled' and refused to enter into an interactive process as was required although Dr. Hicks, Mr. Chandler's treating physician, on April 27, 2016 stated there are times where Mr. Chandler needs time off due to his disability. Dr. Hick's [sic] letter stresses frustration as his previous notes have not been read. This was not Dr. Hick's only letter. EL307, the Rehabilitation Act, and the <u>MD 110</u> all require an

---

[3] The exception is that, where the FAC uses "Mr. Chandler" in place of the complaint's use of "Plaintiff," this non-substantive change is not indicated via underlining.

- 7 -

|   |   |   |
|---|---|---|
| 1 |   | interactive process." |
| 2 | ¶ 42: | "Kathy Holsome-Benion, <u>Supervisor</u>, declared Mr. Chandler AWOL even |
| 3 |   | though Mr. Chandler had provided medical documentation for his absence. |
| 4 |   | <u>This was discriminatory and retaliatory</u>." |
| 5 | ¶ 43: | "At each Fact-Finding Mr. Chandler was present for, Mr. Chandler informed |

¶ 43: (continued) Kathy Holsome-Benion and Union representation he had a medical condition or disability and verbally asked for reasonable accommodation. Ms. Holsome-Benion did not follow the guidelines in Publication 316 and Publication 317 as required. (ROI 00865-00877). She also failed to reference and used the incorrect version of the EL-307. <u>USPS did not refer it to DRAC or attempt to enter into an interactive process or look for accommodations</u>."

In its motion, USPS argues these allegations are insufficient to cure the deficiencies identified in the February 2021 order because "Plaintiff does not allege the names of the supervisors he contacted, what their titles were, how they were connected to the EEO process, when he contacted them, nor does he allege facts showing that such contact was *intended* to initiate an EEO complaint." (Doc. 30 at 10.)  In his response, Plaintiff does not meaningfully address USPS's arguments on this issue.  (Doc. 33.)  Indeed, the response is organized in scattershot fashion and largely consists of rehashing many of the legal issues that were addressed in the February 2021 order, such as the viability of pattern-and-practice claims (*id.* at 7-9) and mishandling-of-administrative-complaint claims (*id.* at 12-13), and of discussing the contours of a hostile work environment claim (*id.* at 9-12).  In its reply, USPS notes the non-responsive nature of Plaintiff's response and further notes that the FAC "does not allege any facts demonstrating that the 45-day limit should be subject to waiver, equitable estoppel, or equitable tolling." (Doc. 34 at 4-5.)

The Court agrees with USPS that the new allegations in the FAC do not cure the deficiencies identified in the February 2021 order.  At most, the new allegations are sufficient to demonstrate that, before officially contacting an agency EEO counselor in

April 2016, Plaintiff made reasonable-accommodation requests to various supervisors. But as USPS correctly points out in its moving papers, such accommodation requests do not, without more, plausibly establish administrative exhaustion. *Johnson v. Henderson*, 314 F.3d 409, 415 (9th Cir. 2002) ("[T]here is no basis in law to suggest that an employee's complaints to her supervisors satisfy the requirement that the aggrieved employee seek EEO counseling prior to filing a formal complaint or suing in court."). It is true that "a complainant may satisfy the criterion of EEO Counselor contact by initiating contact with any agency official logically connected with the EEO process, even if that official is not an EEO Counselor, and by exhibiting an intent to begin the EEO process." *Kraus v. Presidio Tr. Facilities/Residential Mgmt. Branch*, 572 F.3d 1039, 1044 (9th Cir. 2009) (emphasis omitted). Agency officials logically connected with the EEO process have generally been understood to encompass EEO personnel in positions with a variety of titles, including EEO "officers," "specialists," and "deputy directors." *Id.* at 1044-45 & n.6. In other words, the "contact with a Counselor" requirement can "include contact with agency officials with EEO counseling responsibilities or a connection to the counseling process, without attributing dispositive significance to the officials' job titles." *Id.* at 1045. Here, however, the FAC asserts no facts indicating that Plaintiff's supervisors were clearly connected to the EEO process. Nor does the FAC allege any facts suggesting that Plaintiff had an intent to begin the EEO process when he requested accommodations—for example, by raising claims of discrimination and requesting to be directed to USPS's EEO when he spoke to his supervisors. Nor has Plaintiff made any attempt to allege new facts that might trigger an entitlement to waiver, equitable estoppel, or equitable tolling. Thus, the Court concludes that the claims previously dismissed on timeliness grounds remain untimely.

IV.   Sufficiency Of ADEA Claim

Because Plaintiff has now dropped his Title VII claim, and USPS does not seek the outright dismissal of Plaintiff's Rehabilitation Act claim, the final claim to address is Plaintiff's ADEA claim. In the February 2021 order, the Court concluded the complaint was deficient as to this claim because it (1) failed to allege that Plaintiff was performing

his job satisfactorily; and (2) provided only vague and conclusory allegations as to whether younger employees had received favorable treatment. (Doc. 18 at 23-24.)

As for the first deficiency, the FAC adds allegations that Plaintiff "us[ed] intermittent FMLA leave to do his job satisfactorily" (Doc. 21-1 ¶ 48); that "when [Plaintiff] was taking intermittent FMLA he could and did do his job better than satisfactorily" (*id.* ¶ 63); that Plaintiff "was performing his duties satisfactorily" (*id.* ¶ 67); that Plaintiff "had worked successfully and satisfactorily a city carrier [who] was in the top pay scale" (*id.* ¶ 72); and that Plaintiff's "performance of his duties was always satisfactory or better" (*id.* ¶ 74). The Court is satisfied that these new allegations remedy the first deficiency.

As for the second deficiency, although the FAC now identifies eleven "younger" employees by name (Doc. 21-1 ¶ 74)—a level of identification that was absent in the initial complaint—it includes no additional facts establishing that these employees were substantially younger, other than to use the word "substantially" once. It does not, for example, allege the ages of the other employees. *See, e.g.*, *Brazill v. Cal. Northstate Coll. of Pharmacy, LLC*, 904 F. Supp. 2d 1047, 1052-53 (E.D. Cal. 2012) ("[T]he replacement of a slightly younger employee will not give rise to a successful ADEA claim. The replacement must be substantially younger . . . . [A] ten-year age difference would be considered substantial.").

Nor does the FAC indicate how many of the listed employees received favorable treatment by management, beyond asserting that they were hired as city carriers. There is, therefore, no indication that these younger workers were less experienced but nevertheless brought in to fulfill the same duties that Plaintiff performed—for instance, those required of workers in a "top pay scale." *Compare Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (complaint sufficient where plaintiff alleged she was at least forty years old, received consistently good performance reviews, was discharged, and five younger comparators in the *same position* kept their jobs). Similarly, statements in the FAC such as "[o]thers at [USPS] who were older and disabled were also treated in a

discriminatory manner" (Doc. 21-1 ¶ 72) again illustrate that the Plaintiff is relying on conclusions, not assertions of fact.[4]

For these reasons, Plaintiff's ADEA claim remains deficient and subject to dismissal.

V.     Leave to Amend

Plaintiff does not include, in his response to the motion to dismiss, a request for leave to amend in the event of dismissal. The Court construes this as a concession that leave to amend isn't warranted.

At any rate, even if Plaintiff had made such a request, it would be denied. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." The Ninth Circuit has emphasized that "[t]his policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted).

Here, granting Plaintiff leave to file yet another amended complaint would be futile. The Court provided detailed amendment instructions in the February 2021 order, which Plaintiff largely ignored. *Cf. Chodos v. W. Publishing Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion

---

[4] To the extent Plaintiff intended for his allegations regarding Holsome-Benion to support his ADEA claim, those allegations are conclusory and deficient for that purpose. The FAC alleges that Plaintiff "was treated differently than others including Ms. Holsome-Benion (disabled, age unknown) who on information and belief was similarly situated and received reasonable accommodation from [USPS] for her disability." (Doc. 21-1 ¶ 68.) In addition to not alleging the age of this comparator, the FAC does not explain how Holsome-Benion is similarly situated. *See, e.g.*, *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) ("A plaintiff's assertion that she is similarly situated to other employees is just a legal conclusion—and a legal conclusion is never enough.").

in deciding subsequent motions to amend is 'particularly broad.'") (citation omitted).

Accordingly,

**IT IS ORDERED** that USPS's motion to dismiss (Doc. 30) is **granted**. The sole remaining claim in this action is Plaintiff's Rehabilitation Act claim (which USPS has never independently challenged), and that claim may only be premised on the six acts specified in the February 2021 order (whose timeliness USPS has not challenged).

Dated this 1st day of October, 2021.

Dominic W. Lanza
United States District Judge